| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 1:15-CR-19(4) |
| | § | |
| LESLIE LEE INMAN | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Leslie Lee Inman's ("Inman") Motions for Early Release (##1099, 1100), which are virtually identical, wherein Inman seeks early termination of her five-year term of supervised release. Inman's United States Probation and Pretrial Services ("Probation") Officer in the Eastern District of Texas prepared a report for the court's consideration. Inman's Probation Officer in the Southern District of Texas is opposed to her request for early termination of her supervised release. Her Probation Officer in the Eastern District of Texas is likewise opposed to Inman's request for early termination and reports that the Government is also opposed. Having considered the motions, Probation's opposition, the Government's position, the record, and the applicable law, the court is of the opinion that Inman's motions should be denied.

I.   Background

On March 5, 2015, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a four-count Indictment against Inman, along with 23 codefendants, charging her and 22 codefendants in Count One with Conspiracy to Possess with Intent to Distribute a Controlled Substance (Methamphetamine), in violation of 21 U.S.C. § 846 (#1). She was not named in the other counts of the Indictment. Inman pleaded guilty to the offense charged in Count One of the Indictment on June 30, 2015, pursuant to a non-binding plea agreement. On March

11, 2016, the late United States District Judge Thad Heartfield sentenced Inman to a term of 168 months' imprisonment as to Count One, to be followed by a five-year term of supervised release (#856). On December 12, 2024, former President Joseph Biden granted Inman an Executive Grant of Clemency, commuting her prison sentence to expire on December 22, 2024, leaving intact and in effect her five-year term of supervised release (#1092). On December 20, 2024, Inman began serving her term of supervised release in the Southern District of Texas, which is projected to expire on December 19, 2029.

In her motion, Inman, age 47, asks the court to terminate her supervision at this time, having served just over one year of her five-year term of supervised release. She maintains:

> In 2015, I was charged with conspiracy to distribute methamphetamines and served 7.5 years in incarceration. I was released to home confinement on August 15, 2022, where I remained until January 2025 before transitioning to probation. During my time in custody, I took every class available to me and worked two jobs when permitted–determined to stay productive and learn from my mistakes.
>
> I have come to understand the deep consequences of my actions, especially the pain of being separated from my children during their formative years. That loss is indescribable. Since returning home, I've been blessed to reconnect with my children and meet my grandchildren. Their forgiveness and love have given me a renewed sense of purpose and hope.
>
> I've worked hard to rebuild my life. I've maintained a clean record throughout incarceration and probation, and I am proud to say I now hold a stable job and am in the process of purchasing a home. I've taken full responsibility for my past and am committed to continuing on this positive path.

She adds, "I am ready to fully move forward and continue contributing positively to my family and community."

II.   Analysis

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering certain of the

factors set forth in Section 3553(a),[1] "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *accord United States v. Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir. 2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir. 2021); *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x 361, 363 (11th Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018). "Early termination of supervised release is not an entitlement." *United States v. George*, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021). Instead, the defendant bears the burden of demonstrating that early termination is warranted. *Id.*; *United States v. Luna*, No. 1:95-cr-05036-AWI, 2018 WL 10156108, at *1 (E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x 561 (9th Cir. 2018). Early termination "is not warranted as a matter of course." *United States v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022). "To the contrary, it is only 'occasionally' justified." *United States v. Shellef*, No. 03-CR-0723 (JFB), 2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)). In fact, in *United States v. Bowe*, the United States Court of Appeals for the Fourth Circuit stated that "Congress has manifested an intent to require full service of supervised release for rehabilitative purposes." 309 F.3d 234, 240 (4th Cir. 2002) (citing *Johnson*, 529 U.S. at 53).

---

[1] These factors include: the nature and circumstances of the offense and the defendant's history and characteristics; the need to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of the defendant; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing Commission guidelines and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

District courts enjoy considerable discretion in determining when the interest of justice warrants early termination. *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022); *see Melvin*, 978 F.3d at 52. Compliance with the terms of supervised release and with the law alone is not enough to merit early termination; such conduct is expected and required. *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination."); *United States v. Seymore*, No. CR 07-358, 2023 WL 3976200, at *1 (E.D. La. June 13, 2023) ("[C]ourts have generally held that something more than compliance with the terms of [supervised release] is required to justify an early termination . . . ." (quoting *United States v. Smith*, No. 10-cr-53-DPJ-FKB, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014))); *Lynn*, 2022 WL 2446328, at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C. § 3553(a) factors did not support early termination, noting that the defendant "engaged in constant serious criminal behavior when he was given chances before"); *United States v. Sandles*, No. 11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL 4356322, *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01, 2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (finding that the conduct of the defendant did not

4

warrant early termination of supervised release, as the defendant sought relief based on his circumstances and the alleged conduct of others) (citing 18 U.S.C. § 3583(e)(1)); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts have observed, "if every defendant who complied with the terms of supervised release were entitled to early termination, 'the exception would swallow the rule.'" *United States v. Kassim*, No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

While the court need not find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release, this does not mean that such circumstances are irrelevant to ruling on a motion under § 3583(e)(1). *United States v. Ferriero*, No. 13-0592 (ES), 2020 WL 6701469, at *2 (D.N.J. Nov. 13, 2020) (citing *Melvin*, 978 F.3d at 53); *accord United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). This is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would be expected that something has changed that would justify an early end to a term of supervised release. *Melvin*, 978 F.3d at 53; *United States v. Jackson*, No. 11-55, 2022 WL 2789870, at *2 (W.D. Pa. July 15, 2022); *United States v. Santoro*, No. 21-76 (MAS), 2022 WL 37471, at *2 (D.N.J. Jan. 4, 2022); *Ferriero*, 2020 WL 6701469, at *2. In other words, extraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but they are not necessary for such a termination. *Melvin*, 978 F.3d at 53; *United States v. McClamma*, 676 F. App'x 944, 947 (11th Cir. 2017) ("New or unforeseen circumstances can

5

justify a modification, but such circumstances are not necessary."); *Parisi*, 821 F.3d at 347 (recognizing that "changed circumstances may in some instances justify a modification" of a term of supervision). Nonetheless, "'generally, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89); *United States v. Baptiste*, No. 98-207, 2025 WL 871520, at *1 (E.D. La. Mar. 20, 2025) (noting that early termination is generally warranted "only in cases where the defendant shows changed circumstances, such as exceptionally good behavior" (quoting *United States v. Jones*, No. V-11-21, 2013 WL 2417927, at *1 (S.D. Tex. June 4, 2013))); *Smith*, 2014 WL 68796, at *1.

According to Inman's Presentence Report ("PSR"), prepared on August 27, 2015, and revised on October 16, 2015, her offense of conviction entails her serving as a manager/supervisor of a large-scale, international and multi-state drug trafficking organization ("DTO"). The DTO distributed, *inter alia*, multi-kilogram quantities of methamphetamine brought in from Mexico and delivered to customers within the United States. The DTO began operating in 2011. Inman and other codefendants, including her husband, Christopher Dean Inman ("Christopher"), distributed these multi-kilogram loads of methamphetamine along with other narcotics to both local customers in Texas, including the Eastern District of Texas, and to coconspirators located in other states. Distribution was achieved through the use of cellular telephones and various vehicles. When customers were in need of methamphetamine, they would typically contact one of the distributors, including Inman, via cellular telephone. Once a price had been agreed upon by the distributor and the customer, the distributor would coordinate a meeting for the customer to inspect the methamphetamine who would purchase the drug if deemed acceptable. Often the purchasers or

their couriers would subsequently go to a location where they could meet without drawing attention from law enforcement. Other times, Codefendant John Nealy Holt ("Holt") would personally distribute methamphetamine to customers from his residence in Houston, Texas. Large quantities of tainted funds generated by the conspiracy were transported back to Mexico and elsewhere via bulk shipments of U.S. dollars secreted in hidden compartments and voids in vehicles and by body carriers. After law enforcement learned of the DTO in 2012, a number of independent investigations were conducted in which controlled purchases were made from members of the DTO and seizures of money, drugs, and firearms occurred. Inman was implicated in drug trafficking activities involving the DTO on the following dates and locations:

> June 27, 2014—Houston, Texas—seizure of 1.343 kg methamphetamine & $41,107 in drug proceeds
>
> July 16, 2014—Houston, Texas—participation in meeting pertaining to purchase of methamphetamine
>
> August 15-16, 2014—Houston, Texas—2 kg purchase of methamphetamine
>
> August 17, 2014—Houston, Texas—payment of drug proceeds to Codefendant Gilbert Gomez ("Gomez")
>
> August 18, 2014—Houston, Texas—1 kg methamphetamine & undetermined amount of drug proceeds
>
> August 21, 2014—La Porte, Texas—delivery of undetermined amount of narcotics from Gomez to Holt
>
> August 27, 2014—Houston, Texas—payment of drug proceeds and receipt of narcotics
>
> September 9, 2014—Montgomery County, Texas—seizure of 78.4 g of methamphetamine

Inman stipulated that she was responsible for the distribution of more than 4.3 kilograms of methamphetamine during the course of the conspiracy. Inman's criminal history includes prior

convictions for driving while intoxicated, forgery, theft of service - deception, and trespass of property/building. She failed to comply with a prior term of probation, and it was revoked.

Inman reported a long history of substance abuse beginning at age 14, when she first consumed alcohol, which she then used daily until 2008. She tried marijuana and cocaine while in high school but did not continue using those substances. Inman first began abusing opiates in 2001, which she continued to use until she was incarcerated in 2012. In 2009, she first began using methamphetamine, which according to Inman, caused her and her husband to lose their vehicle, home, and company. Inman explained that she used methamphetamine "all day, every day" until her arrest for her offense of conviction in 2015. In the Judgment, the court recommended that she receive appropriate drug treatment while imprisoned.

At the time of her arrest, Inman was married to Christopher, whom she had wed in 2000. Two children who were born to this union, who were ages 14 and 15. The children had been removed from the family home and were residing with their maternal grandmother. Child Protective Services ("CPS") had previously been involved with the children, and Inman advised Probation that she and her husband had not been allowed contact with them. CPS records revealed a history of referrals to the agency. In early 2011, the children were removed from the home after CPS substantiated claims of neglectful supervision. The CPS investigation indicated that both Inman and Christopher had tested positive for methamphetamine and, during a home visit, neither parent knew the whereabouts of the younger child. The home was found to be in a "deplorable" condition with clothes, trash, and broken glass all over the floor. The residence did not have running water. CPS confirmed prior reports of police intervention at the home due to domestic violence and a documented black eye Inman had sustained from her husband's actions. The

children expressed a fear of their father, especially when he was upset. The children were initially placed wit a paternal aunt, but were later placed in the custody of their paternal grandparents. Inman is also the mother of two daughters who were born during her marriage to a prior husband with whom she had minimal contact during their formative years.

In this situation, the court finds that Inman's post-release conduct does not warrant early termination of her supervised release. Although she appears to have complied with her conditions of release to date by maintaining gainful employment, the nature of which she does not disclose, and having incurred no new arrests, pending charges, or violation reports, Inman has served only a small portion of her five-year term of supervised release. She provides no information regarding her employment, her place of residence, with whom she resides, the status of any drug testing or treatment program in which she participates, or her community involvement. She identifies no new or exceptional circumstances or needs that would merit early release from supervision. Inman fails to explain how the conditions of her supervised release limit her employment opportunities, interfere with her family responsibilities, impede any medical or substance abuse treatment, or otherwise impact her daily life in a significant manner. According to Probation, she is currently being supervised as a Post-Conviction Risk Assessment Level of Low/1, which requires only occasional contact. Inman also does not clarify how being on supervised release keeps her from furthering her career, achieving additional goals, assisting her family, or engaging in recreational, religious, or volunteer activities. Under the circumstances, the court finds the current conditions of Inman's supervised release are not onerous and remain appropriate in view of her offense of conviction involving her managerial role in a conspiracy to distribute large quantities of methamphetamine over a substantial period of time.

At this time, Inman has served just a few days over one year of her five-year term of supervised release. Compared to the more than six years prior to her arrest during which she abused methamphetamine on a daily basis, lost custody of her children, and maintained a "deplorable" home that lacked running water and was strewn with clothes, trash, and broken glass, the court's requiring the demonstration of a longer period of compliance with supervised release is appropriate. While her achievements to date should be commended, continuing Inman on supervision will provide her the best opportunity for success in reentry in view of her prior commission of a serious crime involving the possession and distribution of methamphetamine for a number of years. Requiring Inman to complete her entire five-year term of supervised release safeguards against the reoccurrence of criminal activity, while imposing only a minimal burden on Inman. Generally, early termination of supervised release is not granted unless there are significant medical concerns that are not being addressed, substantial limitations on employment, or extraordinary post-release accomplishments that would warrant such a release. Inman does not identify any such circumstances in her motion and is instead seeking early termination of her supervision simply for complying with the conditions of release imposed by the court for a little more than a year. Thus, although Inman appears to be on the right path, the court believes that the completion of her full terms of supervised release appropriately reflects the seriousness of her offense of conviction, deters future criminal conduct, and provides needed structure for her continued rehabilitation. *See Lynn*, 2022 WL 2446328, at *4.

As Probation points out:

> Though Ms. Inman is to be commended for her apparent success thus far on supervision, it is believed that continuing the supervision term would be in the best interest of the community. As previously noted, she has not yet completed a year of supervision. Even if she had reached that time when the motion was filed, the

probation office's recommendation would not change.  USPO Andrew Flores would like Ms. Inman to complete at least 18 months of her term of supervised release successfully before making an additional recommendation.  In addition, the presentence report indicates the instant federal offense involved a large-scale drug distribution organization.  There appears to be no compelling reason for granting early termination aside from general compliance which is expected.  As such, the U.S. Probation Office concurs with the Government and respectfully suggests the motion should be denied at this time.  Ms. Inman will be encouraged to continue progressing towards her goals while on supervision.

The court concurs with Probation and the Government's assessment of the situation and finds that the early termination of Inman's five-year term of supervised release would not be in the interest of justice.

III.    Conclusion

In accordance with the foregoing, Inman's Motions for Early Release (##1099, 1100) are DENIED.

SIGNED at Beaumont, Texas, this 2nd day of January, 2026.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE